The court now calls 115463 and 115553 consolidated. Donald B. v. Roberta B. Andrea B. and all minors, talents. Agenda number 8. Are you ready to proceed? Yes, ma'am. You may proceed. Good morning, Your Honors. Counsel. May it please the Court, I am Christopher Turner, the Assistant Attorney General, here on behalf of the Intervenor Appellant, the Attorney General of the State of Illinois. We ask the Court to reverse the judgment of the Circuit Court holding that Section 607E of the Marriage and Dissolution of Marriage Act violates the Due Process Clause and the Illinois Constitution's separation of powers provision on its face, and further reject the appellee's arguments and hold that 607E is constitutional as applied to him. Most notably, in holding that 607E violates the substantive due process, the Circuit Court had recognized a new fundamental right to court-ordered visitation over the objection of the custodial parent, which no other legal authority we are aware of has yet recognized. And in addition, it recognized this right in the context for a convicted child sex offender while they are still serving their criminal sentence in rehabilitation. Section 607E denies the right that otherwise are provided under Section 607, sorry, Section 607E denies the right that otherwise is provided under 607 to court-ordered visitation for noncustodial and it denies it to noncustodial parties who have been convicted of a sex offense against a minor until that offender completes his criminal sentence and court-ordered treatment. Here, the petitioner appellee, Donald, was convicted of criminal sexual abuse for sexually abusing a girl from age 10 over a four-year period. Under a plea agreement, he received a sentence of two years' probation. Based on that conviction, the mother, Roberta, successfully obtained an order under Section 607E denying Donald visitation. Donald is several constitutional challenges to 607E that it violates substantive due process both on its face and as applied to him. It also violates procedural due process on its face and as applied. It violates the Equal Protection Clause. And here on appeal, he also defends the circuit court's sua sponte holding that Section 607E violates the separation powers provision. For purposes of my presentation, I'm going to focus on what I view as Donald's principal claim, that 607E violates substantive due process by infringing on the fundamental rights of a child sex offender. But, of course, if the Court has any questions on his other claims, I will address those. Strict scrutiny should not have been applied to Donald's substantive due process claim because 607E doesn't infringe on child sex offenders' fundamental rights. Here, Donald broadly asserts that 607E infringes on his fundamental rights to companionship, care, and association with his children. But in analyzing substantive due process, it is important to begin with a careful description of the right asserted to determine whether or not a fundamental right has been infringed. And here, the specific right that Donald seeks to protect is a right of the child sex offender to court-ordered visitation against the custodial parent during his criminal sentence in any treatment. Donald nor and the Circuit Court neither identified any authority, and we are aware of no legal authority, that has recognized a fundamental right to court-ordered visitation over the custodial parent's objection. For all the authority that Donald relied upon, applied strict scrutiny because the challenge statute at issue either permanently and irrevocably terminated all parental rights or because it infringed upon the custodial parent's right to deny or restrict visitation with the child to others. In resolving disputes over custody and visitation between two parents over the control and care of their children, courts have routinely declined to apply strict scrutiny. And they do so because when the State is intervening in such disputes, it is balancing the competing interests of the parents over the care of their child. Here, through 607E, the General Assembly is likewise balancing the competing interests of the sex offender to court-ordered visitation versus the custodial parent's right that was recognized by this Court in Lulay as a fundamental right to deny or restrict visitation if they believe that it is in their child's best interests. Now, most importantly, contrary to the Court's view below, 607E does not terminate all parental rights, and it is not a bar to any contact between the offender and the child. What it does is it denies the offender the right to court-ordered visitation. The Court had erroneously read 607E not only to bar the offender from essentially using the judiciary to compel the custodial parent to allow access to the child, but also to even bar the custodial parent as well from allowing any contact or anyone from allowing contact of any kind. This was a misreading of 607E. But it only denies that right, the rights that are otherwise provided under 607 to noncustodial parties, to obtain an order from the Court to compel such visitation. And it did so here during the offender's criminal sentence for a child sex offense. How do you address, Mr. Turner, how do you address Mr. Bravos' argument that the potential to suspend visitation indefinitely, you know, through the minority of the child, let me just finish, would be tantamount to a termination? Your Honor, it would not be tantamount to termination. I think that's his position, but go ahead. Yes, Your Honor. It does not terminate all parental rights. For still, it certainly doesn't bar contact, as I said. It's only, it's deferring to the custodial parent's decision whether or not to deny or restrict visitation. But more importantly, it also does it temporarily. It doesn't do it indefinitely. It does it defined by the criminal sentence, and that's important. Because this court has recognized that in certain situations, rights can be circumscribed. Certainly, as a public employee, my First Amendment rights in certain contexts can be circumscribed. Inmates' rights can be circumscribed in light of chronological interests. And as we cite in our brief, felons on probation or on parole also can have their rights circumscribed in order to serve the interest to protect the public and to promote the rehabilitation. Mr. Turner, don't you think that the defendant is between a rock and a hard place? Because in the conviction, he wasn't ordered to have any kind of mental health or counseling. So without that, it seems, as Justice Thomas says, it's an indefinite period of time that he's not going to be able to see the child because the other statute says you have to finish counseling. How can you answer that? In addition to the fact that 607F provides for hearings for parents convicted of first-degree murder, but it doesn't provide a hearing for sex offenders. With regard to the first part of your question, Your Honor, that 607, sorry, that 607E that his particular situation, it will only, it only will, 607E only applies if the court has ordered that, that treatment for him and until he successfully completes that treatment. It was the odd case in this. Right now, the criminal code requires for both parolees and for Provisioners it directs the court, the criminal courts actually, to require as a condition of probation for him to receive treatment. But what happened then in the trial court that there was no order? We don't know what the reason was, Your Honor. It's not in the record. We're not sure why he didn't do it. But the court now has ordered treatment for him since then, the Domestic Relations Court. And when he can prove to that court that he successfully completed it, he will be entitled to visitation. And, in fact, he's seeking reinstatement, I believe, right now below. With regard to your second question, 607F, there are different concerns. While both involve the safety and welfare of the child, someone who has murdered another adult is different than, or at least in many circumstances can pose a much different risk to the child than a child sex offender, who, as this Court has recognized, poses a unique and severe danger to other children. Particularly with 607F and the murder, even you can see in the legislative history, they were concerned particularly about there could be certain circumstances such as when one parent has murdered the other parent after a prolonged history of abuse, that maybe in that case still visitation, quarter of visitation might be in the child's best interests. And then 607F in general is designed specifically for the circumstance where you will have one parent will have been killed and the other parent will be incarcerated in prison. And they might, in that circumstance, think that maybe visitation is important. But there's no hearing allowed in E. No, there isn't. You're correct, Your Honor. It's a substantive rule of law, a per se rule of law, that there's no hearing provided until they complete their criminal sentence and their treatment. Your Honor, as I see my time is up. So this is an irrebuttable presumption. Excuse me? It's an irrebuttable presumption. Is that correct? It could be looked at as an irrebuttable presumption. It is a substantive rule of law. As the Court recognized, for instance, in the separation of powers cases that we cited, Shirokska and J.S., while you can look at such substantive, any substantive rule of law as an irrebuttable presumption, I think actually also the Supreme Court made the same point in Michael H. What this is, is a substantive rule of law, a classification that the Court, that the General Assembly has made and is entitled to make subject to the restrictions of substantive due process. Your Honors, we ask again that the Court reverse the Circuit Court's finding that it is unconstitutional on its face and also further reject Donald's arguments that it is unconstitutional as applied to him. Thank you, Your Honor. May it please the Court, Counsel, I am Assistant Public Guardian Mary Hayes. We are child representative for 15-year-old Andrea and 14-year-old Jonathan. And initially, I'd like to thank the Court for allowing anonymity in this case, something that isn't normally provided for in marriage and dissolution act cases. Yet this case, it's appropriate here because of some sensitive concerns about the emotional impact of the father's offense on these two children, who did react differently to the offense. Andrea is a mature and sensitive child, and she has a lot of sympathy toward the female victim in this case. Andrea has been engaging in treatment. She's continuing to benefit from it. She understands that what clinicians recommend when sex abuse affects a family is that treatment not be limited to the individual sex offender, although that certainly is an appropriate component of a treatment program, the kind that we suggest should have been approved below. But that family treatment should also take place. And I have had experience in child protection cases in which the Department of Children and Family Services has brought to bear the expertise of clinicians who recommend this and provide for family sessions so that when the individuals are ready to do so, amends can be made in a way that repairs the damage that has been done by the sex abuse. Jonathan is in a somewhat different position than his sister is. He asked me to tell you that he really wants to see his father, or at least be able to talk to him on the phone. And there are some concerns about phone contact. And at the risk of looking like we're moving the ball here, the public guardian would like to suggest that there may be some appropriate ways to allow for electronic communication. I think not initially allowing phone contact, because there were concerns about the frequency and duration of phone calls when there was phone contact. But there are some innovative methods for electronic communication that we think could be properly employed to allow monitoring of the content of communications with some reasonable steps taken to limit the frequency and duration of the contact and allow some contact for Jonathan, who dearly does want to see his father. And perhaps that can take place. Jonathan is now engaging in treatment, something that was not happening when the child was born. Jonathan has emotional and behavioral problems that precede the criminal case here and do require treatment. So I, with my bachelor's in psychology and my J.D., am very relieved that there are clinicians now involved with both of these children who can offer their experience and education and training. And the thing that I think is so especially helpful about 607E is that it does afford discretion in the approval of the treatment program, and it allows the trial court, when the best interest decisions are made, to make these decisions with input from qualified clinical professionals who've had an opportunity to develop rapport with the individuals involved and make recommendations to the court. Just to be clear, Ms. Hayes, the legal issues before us, are you just making us transparent at the trial court? Well, I think that these are things that should have been considered in analyzing 607E and its propriety. In terms of the procedural due process analysis, the trial court really should have looked at the... I'm talking specifically about your recommendation about monitoring the electronic communications. I'd like to concede that the court below accepted my colleague's recommendation that there be a total bar on electronic communication, and we think that was unnecessarily harsh, and that electronic... that we would like to work toward a plan that would allow for electronic communication. I think it's unfortunate that that wasn't done below. The interpretation urged by my colleague was that visits include electronic communication, and that 607E was a total bar to any communication at all, and I think that's unnecessarily harsh. Ms. Hayes, I have a couple questions, if that's all right. You know, it appears that the overall purpose of the IMDMA, you know, which is civil in nature, is to secure maximum involvement with both parents. But you seem to be arguing that your best argument is that you're protecting... you're talking about all parents, all children, to protect all children. And you argue that purpose of 607E is to protect all children by encouraging treatment. Now, here, however, Donald did submit to an evaluation, and the evaluator concluded he did not need treatment. So how does this section, 607E, serve its purpose in a situation like this? And that's what we're dealing with. Donald underwent an evaluation after the statute was found unconstitutional, and we think it's appropriate at this point for the trial court to look at a few more questions. And I think there are some questions that remain for the trial court that, depending on, I think there's a fork here in this case, and if the statute is found constitutional, it may become necessary for the trial court to consider whether that evaluation     constitutes sufficient compliance with 607E. Is it your argument that the statute is not a bar, not a total bar to visitation for the noncustodial parent? It's not a total bar. There would be a period of time under the statute during the sentence and pending successful completion of a treatment program approved by the court during which there would not be face-to-face contact. That is not the same, however, as a total termination of parental rights, because there are aspects of the bundle of parental rights that would remain intact. But the statute says visitation shall be denied. Yes. So you're saying there's, I want to understand your argument, there's authority for the trial court to allow some type of contact under this provision? It is the public guardian's position that there could be electronic communication with reasonable limits if recommended by Jonathan and Andrea's clinicians, and that there could be cards and letters and there could be contact that would perhaps benefit the children and allow an avenue of communication. Visits can be reinstated upon successful completion of the sentence and the treatment program, and that's what makes this different from termination of parental rights. You agree that would have, going back to my initial question, that would all be a matter for the trial court if we reverse on appeal, right? You're not asking us, it seems to me that that really isn't before us, whether or not a lack of total visitation rights, including electronic communication, is that an issue before us? It's not like we're ruling whether a trial judge abused his discretion in doing that. We have a straight kind of educational question here, right? That's correct. So those matters will maybe get up to us at a later time, but you're not even asking us to allow for electronic communication. No. I do want to make clear, however, that the public guardian would like to concede that the approach that was urged below regarding a total bar on electronic communication was unnecessarily harsh. I think it's an important point. Jonathan would dearly like to communicate with his father, and that could be done safely. I think it's especially important to emphasize the trial court seemed to believe that as long as he had supervised visits, that he could prevent my clients from being molested, and I'm certainly in favor of that. I think, though, that there are some benefits to a treatment program approved by the court that would allow the maximum involvement of both parents, especially Andrea would welcome an opportunity to participate in family sessions with her father if he becomes prepared to address with her how his offense affected the family. But Ms. Hayes, these matters are not before the court or part of the record, are they? We did suggest below that there should be a family component to the treatment program, and the trial court focused, I think, exclusively, and I will admit our brief, I think, focused almost too much on treatment directed at the sex offender, yet we did suggest below that there should be a family component to the treatment and it would benefit the children, and we would like to emphasize that here. Also, I think that it's important to note that a person who's on probation for a sex offense, it's not necessarily the case that we need to assume that they have all of the liberties that citizens generally possess. We see in United States Supreme Court cases that there are instances in which they can be subjected to searches with a lesser standard. Mr. Brock lost custody of the children, and the fundamental rights that the United States Supreme Court has recognized to this point belong generally to the custodial parent. The decisions regarding education and religion belong now to the mother in this case because the father lost custody. There are, I think, meaningful opportunities to be heard at meaningful times that comport with procedural due process. I think it's clear that there is a way for him to regain visits, so it's not a termination of parental rights, and we would respectfully request reversal. Thank you. If it please the Court. Counselors. Good morning. My name is Zachary Bravos. I'm representing Donald in this appeal. We are asking the Court to affirm the trial court's ruling that Section 607E is unconstitutional on its face and as applied. Very briefly, Donald and Roberta had been married. They had four children. They went through a divorce process. As a result of that, there was joint custody. However, primary residential placement was actually with Donald. Children were living with him, and he was their caregiver for about five years. Then came a time when Donald was indicted for a multitude of sex offenses related to an unrelated child. And at that point, the trial court temporarily changed placement and put the children with Roberta and ordered supervised visitation with Donald. And as the Court noted below, Donald exercised supervised visitation for about two and a half years without a single adverse incident, without a single complaint. And then eventually Donald pled guilty to a single count of criminal sexual abuse, which was a Class IV felony, and he was sentenced to two years of probation. Why wasn't he given counsel? Judge, I don't know. It was a – it was a, I think, a somewhat unusual sentence because you had, you know, very serious felonies, and then eventually they accepted a plea to a single count like that. Does that put him in a situation between a rock and a hard place, as I asked to propose a counsel, that without that, then the next statute says that he has to have it? I know. It's what it is, and I didn't handle the criminal case. But, yeah, you're right. It does put him – and, of course, as the Court now knows, he's had an evaluation that says he doesn't need counseling. Well, did he have an evaluation before the Court in criminal matter decided not to give it to him? No. There was no evaluation? There was no evaluation. I looked at that record, Judge, and there was no evaluation. The agreement was reached that he would – he wasn't even placed in the sex offender probation. Even though the statute required it? I can only tell you what happened. I can't tell you why it happened. I can only tell you what happened. And the sentence has now been completed. Obviously, the State agreed to it. Yes. Let me ask a question that maybe I misunderstand something. Does the criminal statute require treatment? It requires an evaluation. It doesn't necessarily require treatment. That's my understanding. The criminal statute – we look specifically at the statute of criminal sexual abuse, a class 4 felony. Yes. It will show us that the Court is required to order evaluation and treatment if appropriate. We're going to find that language in the criminal statute? I believe you will. If you look at the statute in effect at that time, the sentencing order should have, if it followed the statute, said that Donald should have had an evaluation. Okay. He's now had the evaluation, obviously. But upon that plea of guilty, then, visitation with his children was terminated in Stanford, just like that, because of the dictates of 607E. And we think 607E is unconstitutional. It's unconstitutional because it violates due process, equal protection, and the separation of powers clause in the Illinois Constitution. I don't think there can be a doubt but that there is a fundamental liberty interest and constitutional right in a parent to the companionship and custody of their children. And when you look at a statute that infringes upon a fundamental right, you have to review that statute with strict scrutiny. And in order to survive strict scrutiny, a statute has to be narrowly tailored to meet compelling State interests, and it has to use the least restrictive means possible. This statute doesn't do that. This statute uses the most restrictive means. It provides... But parental rights aren't being terminated here, right? They are not being terminated, but you don't get to infringe constitutional rights just a little bit. You can't infringe them at all. Well, doesn't strict scrutiny only apply to termination? No. I don't believe it does. And this statute does effectively terminate parental rights. There are a number of sex offense statutes, because this statute says you can't have visitation not just so long as you are incarcerated, but so long as you are incarcerated, so long as you're on probation, so long as you're on parole, and so long as you are on mandatory supervised release. And there are a number of statutes in this area in which mandatory supervised release can extend for a lifetime. So your parental rights are effectively terminated. That's our position. And this statute provides no notice. There's certainly, you can't, there's no provision in the criminal code that says once you plead guilty to this, by the way, you're not going to be able to see your children. It provides no opportunity to be heard at any time and in any manner. And this statute violates the fundamental public policy behind the Marriage and Dissolution of Marriage Act. That act does want to have the maximum involvement of both parents in a child's life. And the legislature has formed a scheme for doing that. The Marriage Act directs the courts to assess questions of custody and visitation and contact with a view to determining the best interests of the child. And when the court does that, they take all those factors into consideration, everything that can be talked about in a parachild relationship. And here, the legislature has taken that power away from the court. It is the trial court that's in the best position to make judgments about the relationships between individuals and the family. 607E says you just can't do that. Regardless of what the history has been, regardless of what the past relationships have been, regardless of whatever safeguards can be put in place so that parental contact can continue, you can't consider any of that. We are going to impose a one-size-fits-all that says once you accept any kind of a condition to a sex offense involving a minor, you can't see your children. So you're saying that the legislature has determined what's in the best interest here in visitation, and the statute is an absolute bar to visitation regardless of what the parents, either parents, custodial parents' wishes are. That's the way I read the statute. But even if you read it to say, well, it only applies to those parents who are involved in the court system, that are involved in proceedings under the Marriage and Dissolution of Marriage Act, it violates even equal protection because now you have a situation where you have one certain class of parents that have been convicted of a sex offense, only those that do not have custody, that cannot see their children. Other parents who do have custody and have been convicted of sex offense are not affected by the statute. That doesn't make any sense. There's no rational basis for making that classification. And then as we pointed out in our briefs, there's other absurd results that come from this, too. My client can reside with other children. A sex offender can reside with his children, but he can't even visit his children. This statute is unconstitutional because it violates equal protection. It impinges upon the authority of the courts to make determinations about best interests for children. It violates equal protection. And for all of those reasons, my client is asking you to affirm the trial court's decision that this statute is unconstitutional. If there are no further questions, I'm done. Thank you very much. Your Honor, I'll start off by addressing counsel's equal protection argument that the statute 6070 is somehow irrational because it only applies to noncustodial parents and other noncustodial parties. Clearly, noncustodial parties and custodial parents are not similarly situated with regard to visitation. Visitation rights have no relevance, really, to a custodial parent other than to the fact that they infringe upon their rights over their control over their child. And with regard with to the treatment of the parent who is a sex offender versus another sex offender, again, 6070 applies to anybody. That is, what it does is it denies the rights provided under Section 607 to court-ordered visitation to the extent anyone would have otherwise would have a right to that court-ordered visitation under 607 if they're convicted for the child sex offense, then it will be denied to them for the term of the criminal sentence. Counsel still does not identify any cases recognizing a fundamental right to court-ordered visitation. He does argue that it still would infringe upon the fundamental right of association because he claims that it terminates all rights and because he argues that it terminates all rights because in some cases MSR could last for a lifetime. However, the argument that it could last for a lifetime or for other long periods for some parties, for some sex offenders, wouldn't apply to all sex offenders. It certainly wouldn't support facial invalidity, and it also wouldn't apply to Donald who received two years' probation. In addition, he argues that it was not narrowly tailored at all to the – I'm sorry, that 6070 is not narrowly tailored to the purpose of the statute because it doesn't provide for – I'm sorry. Well, it is – I'll just argue directly that it is narrowly tailored. It only applies to those who are convicted for a child's sex offense. It doesn't apply to all offenders. It doesn't apply to all sex offenders. It applies to those that this Court has recognized present the unique and most severe risk to other children. And it only applies after that sex offense has been found beyond a reasonable doubt. But this is even beyond the standard of evidence which – sorry, the standard of proof that's required to prove facts in support of an unfitness finding that would terminate all parents' rights, which is clear and convincing evidence. With regard to your prior questions, Justice Burke, regarding whether or not – if there's no treatment plan, what is the effect on Donald? Well, the effect is if no court orders a treatment plan, including the Court here, then 6070 just doesn't apply to them. We believe 607 that – well, we – is the criminal code does require as a condition of probation, that's 730 ILCS 5 slash 5 dash 6 dash 3, subpart A8.5. Does he know? That's for the conditions for probation, that they actually successfully – they successfully complete a program as a condition of probation. And there's a similar provision for parole as well in MSR. I'm sorry. It's required? In probation for criminal sexual abuse? It's a class – whatever it is. It's a class A misdemeanor? Is that right? It's a class 4 felony, Your Honor. Okay. Class 4 felony. And probation is an alternative for a class 4 felony, and the statute provides that for a class 4 felony that there has to be an evaluation and treatment plan? It applies for all sex offenses. It's the part of the criminal code that sets conditions for probation, and it directs the Court, says it shall institute as a condition of probation for sex offenders that they will – shall successfully complete a program, a sex offender treatment program. In this case, it didn't happen. If no court does order a treatment program, though, then 607E's bar does not apply. Well, did the Court abuse its discretion by not doing – following the statute? The criminal court – it should have followed the statute. The effect of that, it hasn't been before. We haven't argued that. Whether – if it doesn't follow the direction, then it hasn't followed the direction. It should have. I don't – I don't know how that – I don't think that really impacts. So, Donald and others think that now they could come to – he still is – the court – the family court has the authority to order such treatment as well. And in addition, with regard to the point that whether or not this is an irrebuttable presumption, this is no more an irrebuttable presumption than any parole condition or probation condition or other substantive rule of law that says that if someone meets certain criteria, then they – then certain things must happen. And that is the case here. Well, counsel, let me ask you this. If I understand the scheme of how this works, give me an example. What's the range of a sentence somebody may have? What's the top? The top – I mean, you could – you can – for predatory – for certain predatory sexual assaults, it could be for life. Okay. So during that entire frame of – framework of the sentence, there is an absolute bar for lifetime. There is, Your Honor. Is that right? That is – that's correct, Your Honor. So how is that not an absolute bar? We don't – we still argue that while that is a closer case, it is still not an absolute – it's not an absolute bar on contact because, first of all, the custodial parent can still allow contact between the child and the child's sex offender. They're still permitted to do it. It's just a court-ordered visitation. It's the power of the sex offender to bring in the judiciary to order and compel that parent to provide contact with the child. So you're saying the way this statute operates, even though it imposes a bar, the parent could supersede that? Right. It's not a bar. It's a deny. It says that no person convicted of the child's sex offense shall be entitled to visitation rights. And that's what 607 provides. It provides – it provides visitation rights. You answered my question. Thank you. If Your Honor, if I just may close in. For the reasons set forth in our brief and our applied brief and argued here today, we ask that you reverse the ruling of the circuit court finding 607E unconstitutional on space and further find 607E constitutional as applied to the defendant. Thank you, Your Honor. Ms. Hayes. If I heard Assistant Attorney General Turner correctly, he said that Mr. Brock, Mr. Fee was ordered into treatment by the family court. And I'm not aware of that having happened. And I have been appearing regularly in the trial court on this case. I'm not aware that treatment has been ordered in the court below. I have no explanation in the record for why the criminal court did not order treatment. It is required. The fact that it was not required in the criminal case does not prevent this father from obtaining treatment privately as his children are. And I think that there could be a family treatment program even in the absence of one having been ordered. It is a puzzle. Why it would not have been ordered. Our state has a scheme that allows for treatment and registration of sex offenders. And on paper, it looks great. And in this case, it was not followed. And we don't know why. Visitation decisions are not subjected to strict scrutiny. Termination of parental rights is. There are many visitation decisions that are made by many courts across the state that are not subjected to strict scrutiny. So it is a distinction between this case and termination of parental rights that I think is important. Mr. Bravos argued that his client can reside with other children, children who are not his own. A parent who allows a convicted child sex offender to reside with their children does so at their peril. If that happens, the family court in this case has jurisdiction over the children who are his offspring, and it would be up to child protection officials or other private persons to act and bring another action to protect the offspring of other people. But he can't reside. I mean, it's just that there could be objections to it, but the court allows it. He can't reside with other children. I'm not aware how a court is allowing that. The law provides it? Does the law provide it? A parent who's not a party in this case who allows their children to reside with a convicted child sex offender does so at their peril, and there could be a case. I know, but does the law permit that to happen? It could be considered neglect due to an injurious environment, and an action could be taken to protect those children. So to conclude, we're requesting reversal, and we're asking that this court remand with instructions to approve a treatment program under 607E. Alternatively, we're asking that this case be remanded with instructions to consider the current circumstances of the children, evaluate serious endangerment, and also consider the best interest factors. One of the best interest factors calls upon the court to consider the interrelationship of family members and others who can play a supportive role in the lives of the children, and we think that's something that the court below did not address. He simply focused on the wishes of the children, which are disparate here. And if there's not serious endangerment, we're asking that the court be called upon to decide what visits would serve the best interest of the children, especially giving consideration to the mental health treatment needs of both of the individuals involved. If we agree that the statute is unconstitutional, is it not simple to act before the court without the restrictions contained in 607E? It would go back without those restrictions, and the court would be called upon to make that best interest serious endangerment determination like it would in any other case. Thank you. Thank you. Cases number 115463 and 115553, consolidated, Donald B. v. Roberta B. et al., is taken under advisement as agenda number 8. Mr. Turner, Ms. Hayes, and Mr. Bravos, we thank you for your arguments today. You're excused. Mr. Marshall, the Illinois Supreme Court stands adjourned.